# EXHIBIT A

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

|  |  |
|---|---|
| JUSTIN BRADLEY,<br><br>              Plaintiff,<br><br>        v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br><u>Civil Action</u><br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

Plaintiff Justin Bradley ("Plaintiff"), by way of this Complaint against Defendant The Trustees of Princeton University d/b/a Princeton Plasma Physics Laboratory ("Defendant PPPL"), and Defendants ABC Corporations 1-5 (fictitious names describing presently unknown business entities) (along with "Defendant PPPL," collectively referred to as the "PPPL Defendants" or "Corporate Defendants"), Defendant Michael Ford ("Defendant Ford"), Defendant Michael D'Agostino ("Defendant D'Agostino"), Defendant Mark Cropper ("Defendant Cropper"),

Defendant Stefan Gerhardt ("Defendant Gerhardt"), Defendant Ram Srinivasan ("Defendant Srinivasan"), and Defendants John Does 1-5 (fictitious names describing presently unidentified individuals) (along with "Defendant Ford," "Defendant D'Agostino," "Defendant Cropper," "Defendant Gerhardt," and "Defendant Srinivasan," collectively referred to as the "Individual Defendants"), allege as follows:

<u>**INTRODUCTION**</u>

*Plaintiff Justin Bradley was terminated for doing the very job he was hired to perform: protecting lives by enforcing mandatory safety regulations governing high-risk pressure and vacuum systems at Defendant PPPL, a United States Department of Energy ("DOE") laboratory.* As the designated Pressure Systems Subject Matter Expert ("SME"), Plaintiff was responsible for ensuring that thousands of pressurized vessels, vacuum systems, and storage tanks complied with federal safety standards, which are standards designed to prevent catastrophic explosions, structural failures, and loss of life. *Upon assuming this critical role, which had been vacant for five years in direct violation of DOE regulations, Plaintiff uncovered a deeply troubling pattern of systemic noncompliance. Required internal and external inspections of hundreds of high-risk systems had not been performed for over a decade. Under New Jersey law, all existing pressure vessels were to receive initial field inspections by October 6, 2011, followed by re-certifications every three years. Yet Defendant PPPL had not conducted even one of these inspections in over fourteen years. Out of more than 2,600 inspection and compliance records that should have been on file, fewer than 40 existed.*

Plaintiff raised these alarming findings through official internal channels. Instead of acting to protect workers and address the violations, the PPPL Defendants suppressed his reports, resisted corrective action, and falsified records to dishonestly certify uninspected systems as safe. *Even when Plaintiff filed formal safety complaints with the New Jersey Office of the Inspector*

*General ("NJOIG") and the DOE, and both agencies substantiated his findings, the PPPL Defendants escalated their retaliation. They stripped Plaintiff of his authority, altered documentation to hide ongoing violations, and actively obstructed regulatory oversight.*

In one particularly egregious act, Plaintiff was instructed to endorse a final safety report that he knew contained false, incomplete, and misleading data. When he refused to lend his name to the fabricated report without proper corrections, the PPPL Defendants removed his signature, approved the altered document without his consent, and terminated his employment within days. *Though the PPPL Defendants claimed the dismissal was due to budget cuts, the timing and pattern of events reveal their true motive: to punish Plaintiff for refusing to stay silent about unlawful conduct that endangered both workers and the public*.

Plaintiff was entrusted with the responsibility of ensuring safety and compliance at a high-risk federal facility. He fulfilled that duty with integrity. The PPPL Defendants responded by retaliating against him for exposing the truth. Fortunately, New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. (hereinafter referred to as "CEPA") provides redress for employees who suffer retaliation due to complaints of believed illicit conduct. Plaintiff accordingly brings this lawsuit.

## **PARTIES**

1.      Plaintiff is an individual residing in the State of Pennsylvania. At all relevant times hereto, Plaintiff was employed by Corporate Defendants as a Staff Engineer.

2.      Defendant PPPL is a private university located at 100 Stellarator Road, Princeton, New Jersey 08543. At all times relevant hereto, Defendant PPPL is an "employer" as defined under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA").

3.      Defendant Ford, at all times relevant herein, is the Associate Lab Director of Engineering at Defendant PPPL. Upon information and belief, Defendant Ford is a domiciliary of

the State of New Jersey. This claim is brought against Defendant Ford in his individual capacity and/or as an agent or servant of Defendant PPPL. At all times relevant hereto, Defendant Ford was an "employer" as defined under CEPA.

4.    Defendant D'Agostino, at all times relevant herein, is the Lead Electrical Engineer at Defendant PPPL. Upon information and belief, Defendant D'Agostino is a domiciliary of the State of New Jersey. This claim is brought against Defendant D'Agostino in his individual capacity and/or as an agent or servant of Defendant PPPL. At all times relevant hereto, Defendant D'Agostino was an "employer" as defined under CEPA.

5.    Defendant Cropper, at all times relevant herein, is the Head of Engineering Operations at Defendant PPPL. Upon information and belief, Defendant Cropper is a domiciliary of the State of New Jersey. This claim is brought against Defendant Cropper in his individual capacity and/or as an agent or servant of Defendant PPPL. At all times relevant hereto, Defendant Cropper was an "employer" as defined under CEPA.

6.    Defendant Gerhardt, at all times relevant herein, is the Head of Experimental Research Operations at Defendant PPPL. Upon information and belief, Defendant Gerhardt is a domiciliary of the State of New Jersey. This claim is brought against Defendant Gerhardt in his individual capacity and/or as an agent or servant of Defendant PPPL. At all times relevant hereto, Defendant Gerhardt was an "employer" as defined under CEPA.

7.    Defendant Srinivasan, at all times relevant herein, is a Project Manager. Upon information and belief, Defendant Srinivasan is a domiciliary of the State of New Jersey. This claim is brought against Defendant Srinivasan in his individual capacity and/or as an agent or servant of Defendant PPPL. At all times relevant hereto, Defendant Srinivasan was an "employer" as defined under CEPA.

4

8.      Defendants ABC Corporations 1-5 are currently unidentified business entities that have acted in concert with Corporate Defendants, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-retaliation policies of Corporate Defendants, and/or currently unidentified business entities that have liability for the damages suffered by Plaintiffs under any theory advanced therein.

9.      Defendants John Does 1-5 are currently unidentified individuals who acted in concert with Corporate Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-retaliation policies of Corporate Defendants and are currently unidentified individuals who may have liability for the damages suffered by Plaintiffs under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

10.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies encouraging employees to disclose to supervisors or managers of the company any conduct engaged in by the company or a co-worker which an employee reasonably believed violated state or federal law.

11.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies prohibiting retaliation against an employee who discloses to a supervisor or manager any conduct engaged in by the company or a co-worker which the employee reasonably believes is or was a violation of laws, rules, or regulations.

12.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies prohibiting retaliation against

5

an employee who discloses to a supervisor or manager any conduct engaged in by the company or a co-worker which the employee reasonably believes is or was unethical or unsafe.

13.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies prohibiting an employee from suffering retaliation for disclosing to supervisors or managers of Corporate Defendants any conduct engaged in by the company or a co-worker which an employee reasonably believes is or was unethical or unsafe.

14.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies prohibiting an employee from suffering retaliation for disclosing to supervisors or managers of Corporate Defendants any conduct engaged in by the company or a co-worker which an employee reasonably believes is or was a violation of Corporate Defendants' company policies.

15.     On or about May 6, 2019, Plaintiff began working for Corporate Defendants at Defendant PPPL as a Staff Engineer, where he competently and diligently fulfilled his responsibilities, demonstrating loyalty and commitment to his employer. In this role, he supported the design, assessment, and regulatory compliance of essential mechanical systems used in the laboratory's fusion research operations.[1]

16.     As part of his role, Plaintiff conducted technical evaluations, contributed to safety reviews, and helped develop engineering standards to ensure that pressure and vacuum systems complied with DOE requirements, federal and state regulations, and industry quality standards. He

---

[1] Nuclear fusion is a form of clean energy. It does not create carbon dioxide or other harmful atmospheric emissions, which means that it does not contribute to greenhouse gas emissions or global warming. See https://www.iaea.org/topics/energy/fusion/faqs.

[1] See https://www.princeton.edu/news/2018/08/09/secretary-energy-perry-says-pppl-research-has-potential-change-world.

consistently received strong performance reviews over five years and was regarded as an outstanding employee with clear potential for long-term growth at PPPL.

17.     That trajectory changed abruptly when he was promoted to Pressure Systems SME and began raising good faith concerns about Defendants' persistent regulatory violations. In response, Defendants launched a campaign of retaliation that ultimately led to his unlawful termination.

**A.      Plaintiff Objects To Violations Of Law, Rule Or Regulation At Defendant PPPL And Is Subjected To Retaliation.**

18.     In or around June 2023, Plaintiff was promoted to serve as the laboratory's Pressure Systems SME, a role mandated by the DOE for all contractor-operated facilities utilizing pressurized equipment.

19.     This requirement is codified at 10 C.F.R. Part 851, Appendix A, which provides:

> Contractors must establish safety policies and procedures to ensure that pressure systems are designed, fabricated, tested, inspected, maintained, repaired, and operated by trained and qualified personnel in accordance with applicable and sound engineering principles.

20.     A 2024 DOE memorandum further clarifies when national consensus standards do not apply, facilities must designate a qualified independent design professional to fulfill pressure safety oversight. The memorandum expressly states:

> A qualified independent design professional is required to ensure pressure systems are adequately designed and managed in accordance with DOE safety expectations.

21.     At the time of Plaintiff's appointment, the SME position had been left vacant for nearly five years, an ongoing and egregious violation of federal safety mandates which placed both workers and critical infrastructure at risk.

22.      As the Pressure Systems SME, Plaintiff was responsible for leading efforts to bring the lab's aging and undocumented pressure systems into compliance with federal safety regulations, including identifying violations, initiating inspections, and documenting corrective actions. Plaintiff's role was not merely advisory. It was a federally mandated position essential to ensuring the safety of personnel and infrastructure.

23.      Aware of the gravity of these duties, Plaintiff proactively sought and received employer-approved training through programs offered by the American Society of Mechanical Engineers ("ASME") and the Occupational Safety and Health Administration ("OSHA") to perform his responsibilities to the highest standard.

24.      After completing his training, Plaintiff began evaluating the laboratory's pressure systems program, including inspection records, documentation practices, and regulatory compliance. Plaintiff quickly discovered that Defendants' claimed commitment to safety was a façade, masking widespread, long-standing violations of federal safety mandates and a deliberate effort to conceal the risks these violations posed.

*25.      Throughout his employment, Plaintiff was objected to what he reasonably believed to be serious breaches of state and federal law, including DOE safety directives and mandatory inspection requirements. These were not technical oversights or good-faith disputes, they were deliberate, sustained failures that placed lives at risk.*

26.      Plaintiff did his job and for that, Defendants silenced him, retaliated against him, and terminated him.

**B.      Plaintiff Commences His Position As A Pressure Systems SME and Immediately Identifies Longstanding Violations of State and Federal Safety Regulations.**

*27.      Shortly after assuming his role as Pressure Systems Subject Matter Expert, Plaintiff discovered Corporate Defendants had failed to conduct any internal or external*

8

*inspections of the laboratory's pressure vessels, vacuum vessels, heat exchangers, and storage tanks despite being required to do so under applicable state and federal regulations.*

28.      *As a result, Defendants were violating clear DOE safety directives and their own contractual obligations, which were enacted to ensure the safe operation of aging and potentially hazardous pressure systems throughout the facility.*

29.      The requirement to routinely inspect pressure vessels, vacuum vessels, heat exchangers, and storage tanks is a critical safety mandate, particularly in a high-risk research facility like Defendant PPPL, where aging equipment operates under extreme pressures, extreme temperatures, and often uses highly combustible, highly flammable, radioactive, and/or acutely toxic fluids that can pose serious hazards to personnel or the public at large in the surrounding area.

30.      Catastrophic failure of such systems can result in serious and irreversible injury or death to employees and others on-site or the surrounding community off-site, and the public at large in the surrounding area.

31.      These inspections are not discretionary; they are required by state law. N.J.A.C. 12:90-5.14(b) provides:

> All existing pressure vessels shall be inspected in the field prior to October 6, 2011, and shall be subject to certificate inspection thereafter in accordance with the inspection schedule in N.J.A.C. 12:90-5.13.

32.      Despite this unambiguous mandate, the PPPL Defendants failed to conduct even a single internal or external inspection of the laboratory's pressure vessels for years. Many of these systems, including critical tanks and heat exchangers, had been in continuous operation for over forty (40) years without ever being evaluated for their continued safety, integrity, or regulatory compliance.

33.     This was not a minor oversight. It was a complete disregard for the regulatory framework designed to protect human life. As set forth in N.J.A.C. 12:90-1.3(a):

> The purpose of this chapter is to provide reasonable standards for the protection of life and property in the use of boilers, pressure vessels and refrigeration systems.

34.     Corporate Defendants ignored this mandate for over a decade, knowingly operating potentially dangerous equipment in direct violation of their legal obligations and DOE contracting standards.

35.     Plaintiff promptly and repeatedly voiced objections to this practice to Defendant PPPL management throughout the course of his employment and was repeatedly told by all Defendant PPPL management he spoke too that N.J.A.C. 12:90 was not applicable to Defendant PPPL as a federally regulated DOE contractor. However, this was not actually the case.

**C.     Plaintiff Objected to Defendant PPPL's Ongoing Violations of State and Federal Safety Regulations and Refused to Endorse Falsified Compliance.**

36.     Shortly after assuming his role as Pressure Systems SME, Plaintiff reviewed Defendant PPPL's inspection history and discovered no internal or external inspections had ever been conducted on any of the laboratory's pressure vessels, vacuum vessels, storage tanks, or heat exchangers, in direct violation of applicable federal and state regulations.

*37.     Plaintiff complained about this egregious violation of state and federal law through internal channels, including safety assessments and compliance discussions with his supervisor, Steve Raftopoulos ("Mr. Raftopoulos"), who escalated Plaintiff's concerns to Defendant PPPL's upper management. Instead of addressing these serious issues, Defendants dismissed Plaintiff's findings and unfairly labeled his concerns as alarmist.*

38.     Nonetheless, Plaintiff repeatedly continued to object to Defendant PPPL's systemic and longstanding noncompliance, highlighting that critical pressure systems had been operating

unchecked for decades in violation of the law. Despite these grave risks, Defendants willfully turned a blind eye and refused to initiate any inspections or investigations in response to Plaintiff's complaints.

39.     While preparing the mandatory annual Pressure Systems Safety Review, Plaintiff meticulously documented the inspection failures, flagged compliance gaps, and recommended urgent corrective measures. Defendants stonewalled and obstructed his efforts at every turn, deliberately undermining the reporting process.

40.     Plaintiff's objections were grounded in his federally mandated duty as the designated Pressure Systems SME. Yet, instead of support, he was met with silence and ultimately, retaliation.

**D.      Plaintiff Reported His Safety Objections to State and Federal Authorities After Internal Complaints Were Ignored.**

41.     After months of blatant disregard by Defendants, it became clear to Plaintiff internal complaints regarding Defendant PPPL's unlawful and unsafe conduct would be futile. Accordingly, Plaintiff escalated his safety concerns to external regulators.

42.     In or around October 2024, Plaintiff submitted formal safety complaints to the NJOIG and the DOE. He reported that of the 2,600 required safety documents Defendant PPPL was required by law to maintain pursuant to the law, fewer than 40 existed, revealing a staggering failure of oversight spanning over a decade.

43.     Fearing retaliation due to the PPPL Defendants' history of hostility toward internal criticism, Plaintiff initially asked federal officials to keep his identity confidential. However, DOE personnel insisted he reveal himself by raising his concerns directly in a high-level meeting with those responsible for ignoring his warnings. Reluctantly, and while reiterating his concerns about retaliation, Plaintiff complied, revealing himself as the whistleblower.

44.     At this meeting with Defendant Ford, Defendant Meyer, and DOE personnel, Plaintiff detailed the scope of the lab's noncompliance with the law and advocated for immediate corrective action.  Instead of addressing the regulatory violations, Defendant Ford launched into a personal attack, questioning Plaintiff's qualifications and minimizing the safety risks Plaintiff exposed. Needless to say, this was nothing more than a contemporaneous act of retaliation.

45.     Indeed, a DOE official who attended the meeting met with Plaintiff privately the following day, apologized for Defendant Ford's behavior, and confirmed that Plaintiff's safety concerns were legitimate. Nonetheless, Defendants continued to limit Plaintiff's role and dictated the terms of the risk-based inspections promised to federal authorities.

*46.     On May 9, 2025, just months after Plaintiff was sidelined from overseeing the promised inspections, the Ion Source Heat Exchanger suffered a critical failure, developing multiple pinhole leaks at welded seams in a system essential to the lab's operations. The system was immediately rerouted through an emergency bypass, a temporary workaround never intended for sustained use and implemented without addressing the root cause.*

*47.     This infrastructure failure was a direct and foreseeable consequence of Defendants' deliberate disregard of Plaintiff's warnings and their systematic refusal to address well-documented safety hazards.*

48.     Although this incident did not result in immediate injury or collateral damage, the decision to continue operating the compromised system underscores the imminent and ongoing danger to both personnel and equipment, with potentially catastrophic consequences if left unaddressed.

49.     Plaintiff made these whistleblower reports in good faith, and with the intent to protect life, equipment, and compliance with federal safety mandates. Defendants' actions, from

the internal cover-up to their defiance of external oversight, reflect a pervasive pattern of regulatory evasion, retaliation, and recklessness.

**E.**    **Corporate Defendants Retaliated Against Plaintiff for His Protected Safety Objections and Terminated His Employment Under the Guise of Budgetary Constraints.**

50.     After Plaintiff reported serious safety violations to state and federal authorities, Defendants Ford, D'Agostino, Cropper, Gerhardt, and Srinivasan retaliated by launching a coordinated effort to silence him and dismantle his oversight role.

51.     Defendant Ford actively attacked Plaintiff's professional reputation in meetings with DOE officials and excluded him from inspection planning and compliance efforts, leaving him unable to intervene as violations continued.

52.     Defendants D'Agostino, Cropper, and Gerhardt falsified safety reports and manipulated inspection results submitted to the DOE, rewriting facts to conceal their ongoing negligence. Defendant Srinivasan reinforced Plaintiff's exclusion by reassigning his duties, withholding critical information, and denying him access to the budget and schedule needed to perform his job, repeatedly stating, "There's no money to do it right now." Acting together, Defendants worked to silence Plaintiff's warnings, obstruct federal oversight, and retaliate against him by discrediting and pushing him out of his role.

53.     *Plaintiff authored a comprehensive Pressure Relief Device Risk Assessment for DOE submission, exposing serious hazards and required fixes. Defendants D'Agostino, Cropper, Gerhardt, and Srinivasan then conspired to rewrite and sanitize that report, deliberately falsifying information to mislead federal regulators and hide ongoing dangers.*

54.     When Plaintiff refused to sign the doctored report, demanding honesty and compliance, Defendants retaliated swiftly and mercilessly. Defendants Ford, D'Agostino,

Cropper, Gerhardt and Srinivasan orchestrated the unauthorized removal of Plaintiff's signature from the final DOE submission, removing Plaintiff from the report entirely in order to cover up their fraud.

55.     On June 4, 2025, just three days later, the PPPL Defendants fired Plaintiff under the false pretense of budget cuts, despite the fact that his federally mandated role had previously gone unfilled for years and was not immediately replaced. The termination had nothing to do with finances and everything to do with retaliation for exposing the PPPL Defendants' regulatory misconduct.

56.     Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does 1-5, and ABC Corporations 1-5, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

57.     Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does 1-5, and ABC Corporations 1-5, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, and anxiety, causing him mental and emotional anguish and dysfunction and physical manifestations of same, including, but not limited to, nightmares, inability to sleep, weight loss, headaches, panic attacks, crying, negative thoughts, nervousness, anxiousness, anxiety attacks, upset stomach, and stomach pains, all or some of which may be permanent.

## COUNT ONE

## RETALIATION IN VIOLATION OF NEW JERSEY CONSCIENTOUS EMPLOYEE PROTECTION ACT ("CEPA")

58.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

59.     New Jersey's CEPA Law, N.J.S.A. 34:19-1 et seq, provides in pertinent part that:

An employer shall not take retaliatory action against an employee because the employee does any of the following:

c.      objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1)     is in violation of a law, or a rule or regulation promulgated pursuant to law;

(2)     is *fraudulent* or criminal; or

(3)     is incompatible with a clear mandate of public policy or practice concerning the public health, safety, welfare or protection of the environment;

60.     An employee who in good faith complains about a prohibited practice is protected under CEPA, even if the employer or the Court ultimately determines that the alleged violation did not occur.

61.     Plaintiff communicated to Defendants his reasonable belief that Defendant PPPL was engaging in activities which were in violation of law, regulations, and public policy including, but not limited to failing to conduct legally required inspections of pressurized systems.

62.     Plaintiff is a person protected under CEPA as the acts that he complained of are violations of law and regulations and rules related thereto and/or violations of clear mandates of public policy.

63.     Shortly after making his disclosures, Plaintiff was subject to retaliation, as outlined above.

64.     Based on their treatment of Plaintiff, Defendants, jointly or severally, violated the NJ CEPA statute.

65.     Defendants, by their collective and/or individual acts and omissions, are liable to Plaintiff for any and all damages, economic and non-economic, he has and continues to sustain as a result of their joint or several unlawful conduct.

66.     Defendants, individually and/or by and through their respective officials, administrators, managers, supervisors and/or employees, unlawfully conspired with each other in order to subject Plaintiff to unlawful retaliatory conduct in violation of CEPA.

67.     A person subject to unlawful retaliation is afforded the remedy of *punitive damages*. See *N.J.S.A.,* 34:19-1 et seq.  As such, Plaintiff is entitled to an award of punitive damages against defendants, jointly or severally.

68.     As a result of the unlawful retaliatory actions undertaken by Defendants, jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future, as well as consequential damages flowing therefrom.

69.     As a result of the retaliatory acts and omissions of Defendants, jointly or severally, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing him mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

70.     Plaintiff has been compelled to retain counsel in order to file this lawsuit and seek an adjudicated remedy to the damages he has suffered as a result of Defendants' unlawful conduct. The legislature has determined that a prevailing party may be awarded reasonable counsel fees. *N.J.S.A.,* 34:19-1 et seq.  As such, Plaintiff is entitled to an award of reasonable attorney fees against any and all named defendants.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under CEPA, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiffs demands judgment against Defendants for harm suffered in violation of CEPA as follows:

A.  Reinstatement of employment and all benefits;
B.  Back pay and benefits;
C.  Front pay and benefits;
D.  Compensatory damages;
E.  Consequential damages;
F.  Reinstatement;
G.  Punitive damages;
H.  Pre-judgment interest and enhancements to off-set negative tax consequences;
I.  Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.  Such other relief as may be available pursuant to CEPA and which the Court deems just and equitable;
K.  Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.  Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.  Ordering Defendants to undergo anti-discrimination training;
N.  Ordering Defendants to undergo anti-retaliation training;
O.  Ordering Defendants to undergo anti-harassment training;
P.  Ordering Defendants to undergo workplace civility training;
Q.  Ordering Defendants to undergo bystander intervention training;
R.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.   Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.   Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.   Such other relief as may be available and to which the Court deems just and equitable.

## COUNT TWO

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

71.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

72.     During the course of his employment, Plaintiff reported and complained about Defendants' unlawful behavior. Defendants had knowledge of Plaintiff's protests and altered his employment status and/or work environment and/or terminated them as a result thereof.

73.     The acts of Defendants constitute a wrongful discharge in violation of public policy by which Plaintiff have been damaged and will continue to suffer damages.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

## **DEMAND FOR DISCOVERY OF INSURANCE COVERAGE**

Pursuant to <u>Rule</u> 4:10-2(b), demand is made that Defendants disclose to Plaintiffs' attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiffs' attorney with true copies of those insurance agreements or policies, including but not limited to any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

## **DESIGNATION OF TRIAL COUNSEL**

Pursuant to <u>Rule</u> 4:25-4, PETER D. VALENZANO, ESQUIRE, is hereby designated as trial counsel for Plaintiffs.

## **CERTIFICATION**

Pursuant to <u>Rule</u> 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter and/or with respect to this matter, and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*


By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>              Plaintiff,<br><br>           v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br><u>Civil Action</u><br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

## <u>FIRST SET OF DOCUMENT REQUESTS, INTERROGATORIES, PUNITIVE DAMAGES REQUESTS, AND DEPOSITION NOTICES TO DEFENDANT(S)</u>

**PLEASE TAKE NOTICE** that, McOmber McOmber & Luber, P.C., attorneys for

Plaintiff, Justin Bradley ("Plaintiff"), demand that Defendants The Trustees of Princeton

University d/b/a Princeton Plasma Physics Laboratory, Michael Ford, Michael D'Agostino, Mark

Cropper, Stefan Gerhardt and Ram Srinivasan (collectively, "Defendants") produce true and

complete copies of Documents responsive to the following Document Requests and answer under oath the following Interrogatories pursuant to the New Jersey Rules of Court.

## **DEFINITIONS**

1.      The term "Plaintiff" shall mean, individually and collectively, each Plaintiff identified in the above-captioned action.  If more than one Plaintiff is identified in the caption as a party to this lawsuit, Defendants must respond to each request with specific responses applicable to each Plaintiff in this lawsuit.

2.      The phrase "Defendant PPPL" shall mean The Trustees of Princeton University d/b/a Princeton Plasma Physics Laboratory and any of its officers, directors, employees, agents, representatives, successors, predecessors, assigns, divisions, affiliates, subsidiaries, and all Persons acting or purporting to act on its behalf.

3.      The phrase "Defendant Ford" shall mean Michael Ford, Defendant in the above-captioned action.

4.      The phrase "Defendant D'Agostino" shall mean Michael D'Agostino, Defendant in the above-captioned action.

5.      The phrase "Defendant Cropper" shall mean Mark Cropper, Defendant in the above-captioned action.

6.      The phrase "Defendant Gerhardt" shall mean Stefan Gerhardt, Defendant in the above-captioned action.

7.      The phrase "Defendant Srinivasan" shall mean Ram Srinivasan, Defendant in the above-captioned action.

8.      "Defendant(s)" shall individually and collectively mean all Defendants in the above-captioned action.

9.      The phrase "Corporate Defendant(s)" shall individually and collectively any Defendant company, corporation, partnership, union, joint venture, sole proprietorship, association, government agency, or organization, or any other similar type of group through which business is conducted, or any director, officer, employee, or agent thereof.

10.     The phrase "Individual Defendant(s)" shall mean any defendant in this matter sued in his/her individual capacity or as an agent/servant of any Corporate Defendant.

11.     The terms "You," "Your," or "Yours" shall mean the party answering these interrogatory questions.

12.     The term "Entity" shall mean any company, corporation, partnership, union, joint venture, sole proprietorship, association, government agency, or organization, or any other similar type of group through which business is conducted, or any director, officer, employee, or agent thereof.

13.     The term "Person" shall mean any natural Person, partnership, corporation, or other business Entity and all present and former officers, directors, agents, employees, attorneys and others acting or purporting to act on behalf of such natural Person, partnership, corporation or other business Entity.

14.     The term "Action" shall mean the civil action captioned above.

15.     The "Complaint" shall mean the Complaint filed by Plaintiff(s) in this Action.

16.     The term "Answer" shall mean any Answer to the Complaint filed by any party in this Action, which specifically includes all Affirmative Defenses, Denials, and Counterclaims, and was filed with the Court in the above-captioned Action.

17.     The term "Investigation" shall mean any investigation, inquiry, analysis, review, examination, research, study, interview, interrogation, and/or collection of evidence, statements (oral or written), and Documents.

18.     The term "Grievance" shall mean any complaint, grievance, accusation, allegation, protest, and/or objection (formal or otherwise) by Plaintiff(s) or any Person concerning any of the Defendant(s) and Plaintiff.

19.     The terms "Document" and "Documents" are defined in accordance with R. 4:18-1 and includes the original and all drafts and any identical or non-identical copy, regardless of origin or location, of any written, reported, filmed, magnetically stored, or graphic matter, or record of any type or description, whether produced, reproduced, or producible on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including, but not limited to, memoranda, schedules, lists, letter (sent or received), telephone Messages (including but not limited to reports of telephone conversations and conferences), transcripts of telephone conversations and any other retrievable data,   magazines, booklets, circulars, bulletins, questionnaires, assignments, orders, checks, vouchers, notebooks, acknowledgments, instructions, records, stories, index, disc, data sheet or date processing card, notes, minutes, records photographs, computer programs, correspondence, telegraphs, telegrams, diaries, bookkeeping entries, specifications, source code, object code, flow charts, financial statements, charts, studies, reports, tables, analyses, graphs, statements, notebooks, handwritten notes, application, feasibility studies, papers, books, pamphlets, periodicals, appointment calendars, calendar entries, diary entries,  notes, records and recordings of oral conversations or voicemails, emails, inter-office or intra-office Communications, handwritten or other notices, diaries, invoices, purchase orders, bills, bills of lading, work papers, or any other written, recorded, transcribed, punched, taped, filmed,

photographed, videotaped or graphic matter, however produced or reproduced, and also including, but not limited to, originals and all copies which are different from the original, whether by interlineation, receipt stamp, notation, indication of copy sent or received, or otherwise, and drafts, which are in the possession, custody or control of the present or former agents, representatives, employees, or attorneys of Defendant(s), or all Persons acting on Defendant(s)' behalf, including Documents at any time in the possession, custody or control of such Individuals or entities who are known by Defendant(s) to exist. Include any catalog, brochure, or any other data compilations from which information can be obtained and translated if necessary, or any other written, recorded, stored, transcribed, punched, taped, filed or graphic matter however produced or reproduced, to which Defendant(s) have or have had access.

20.    The term "Communication" means any conversation, correspondence, discussion, meeting, Message, record of phone calls, or other occurrence in which data, conclusions, information, opinions, or thoughts are exchanged between two or more Persons, whether it be written, oral, or electronically transmitted.

21.    The term "Message" shall mean text messages, short messaging service (SMS), multimedia messaging service (MMS), iMessages, instant messages (IM) platform (such as Telegram, Skype, Zoom, Facebook Messenger, Instagram Messenger, LinkedIn, Google Meet/Chat, Discord, Signal, Slack, WhatsApp, Teams, and Salesforce Chatter), and other intranet Message platforms.

22.    The "Relevant Time Period" is January 1, 2019 until present.

23.    The term "concerning" is construed in the broadest possible sense to include comprising, constituting, containing, commenting on, dealing with, describing, discussing,

embodying, evidencing, illustrating, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, or supporting in any way, either directly or indirectly.

24.     The phrases "relating to," "relate to," "relates to," "refer to," "refers to," "referred," "relating to," and/or "regarding" shall be construed in the broadest possible sense to include *alia*, concerning to, embodying, constituting, describing, connected with, commenting on, responding to, evidencing, identifying, supporting, contradicting, rebutting, pertaining to, and/or relating in any way.

25.     The terms "including" and "include" shall be construed in the broadest possible sense to include "including without limitation."

## **INSTRUCTIONS**

1.     The terms "all" and "any" shall both be construed as "any and all."

2.     The terms "and," "or," and "and/or" as used herein shall be construed conjunctively or disjunctively to bring within the scope of these topics and requests any and all information which might otherwise be construed as outside their scope.

3.     In addition to the specific instructions contained herein, these Document Requests and Interrogatories shall be subject to the New Jersey Rules of Court.

4.     If more than one Plaintiff is identified in the caption as a party to this lawsuit, Defendant(s) must respond to each request with specific responses applicable to each Plaintiff in this lawsuit.

5.     Interrogatory answers shall be typed beneath the questions and the original shall be returned in accordance with R. 4:17-4(c).

6.      If at any time prior to trial, You obtain information which renders any answer You provide incomplete or inaccurate, amended answers shall be served pursuant to R. 4:17-7.

7.     When referring to a Person, "to identify" means to give, to the extent known, the Person's full name, present or last known address, and last known place of employment.

8.     These Document Requests and Interrogatories shall be deemed continuing in nature so as to require prompt supplementation if, as, and when You obtain additional information.

9.     If anyone identified in response to any of the Document Requests and/or Interrogatories was formerly, but is no longer, employed by You, please so state in the answer and provide the former employee's current address and telephone number (business or home), if known.  If the current address and telephone number are not known, then please provide the former employee's last known address and telephone number.

10.     If You cannot respond to any of these Document Requests and Interrogatories in full after exercising due diligence to secure the information to do so, then respond to the extent possible and explain Your inability to provide a complete answer.  State whatever information or knowledge You have about the unanswered portion of any Document Request and/or Interrogatories.

11.     When a Document Request or Interrogatory asks for You to identify a date, state the exact day, month, and year, if ascertainable or, if not, the best approximation thereof.

12.     Document shall be produced in their original state, i.e., in their original file folders in the exact order as found, without removal or rearrangement of anything contained therein.

13.     Each Document Request that seeks information relating in any way to Communications to, from, or within a business or Entity is hereby designated to mean, and should be construed to include, all Communications by and between that business and/or Entity's present or former representatives, employees, agents, and servants of the business and/or Entity.

14.     All Documents shall be organized and labeled to correspond with the numbered paragraphs of these Document Requests.  If there are no Documents responsive to a particular Document Request, Defendant(s) shall so state in writing.

15.     Production of entire Document. For each Discovery Request to which Defendant(s) are producing Documents, Defendant(s) shall identify in its written response the Bates range of Documents produced which are responsive to that request.

16.     All electronically stored information shall be produced in a reasonably usable form, and it shall not be converted from the form in which it is ordinarily maintained to a different form that would make it more difficult or burdensome for Plaintiff(s) to use such information.

17.     In the event that any oral Communication, statement, Document or portion thereof is withheld on the basis of any privilege or otherwise claimed to be protected against production, such Document shall be identified with in a privilege log which includes: (a) the nature of the privilege or reason for withholding which Defendant(s) contend applied; (b) the factual basis for Defendant(s)' assertion of privilege or the reason for withholding; (c) the type of Document, e.g., letter, memorandum; (d) all authors and addressees; (e) all indicated and blind copies; (f) all Persons to whom the Document was distributed, shown, or explained; (g) the Document's date; (h) a summary description of the Document's subject matter; (i) the number of pages and attachments or appendices comprising the Document; and (j) its present custodian. Whenever a claim of privilege concerns any oral Communication or statement, identify the participants to the Communication and the Person giving and receiving the statement, and set forth the date and place of the Communication or statement and state the general subject matter thereof and state the basis for the claim of privilege.

18.     If any Document was, but is no longer, in Defendant(s)' possession, or subject to Defendant(s)' control, or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been otherwise disposed of.   In each instance, explain the circumstances surrounding any such disposition, including the authorization of the disposition, the date of destruction or discard, the manner of destruction or discard, the reason for destruction or discard, the Person(s) who authorized and carried out such destruction or discard, whether any copies of the Document presently exist, and, if so, the name of the custodian of each copy.

19.     An objection or claim of privilege directed to part of a request does not constitute an excuse for failure to respond to the parts of the Document Request or Interrogatory for which no objection or claim of privilege is made.

20.     If a refusal to answer a Document Request or Interrogatory is based on the ground that the request is overly burdensome, identify the number and nature of Documents that need to be searched.

21.     The Punitive Damages Requests relate to Corporate Defendant(s)' financial condition for purposes of punitive damages. "Case law recognizes the Defendant's financial condition as a relevant factor in all punitive-damage awards." *Herman v. Sunshine Chem.Specialties, Inc.*, 133 N.J. 329, 339 (1993). In order to properly determine the appropriate punitive damage award amount, the trier of fact "must consider evidence of the Defendant's financial condition." *Id.* at 342. "The degree of punishment resulting from a judgment must be, to some extent, in proportion to the means of the guilty Person." *McDonough v. Jorda*, 214 N.J. Super. 338, 349 (App. Div. 1986) (citing Restatement (Second) of Torts 908 cmt. d (1977)), *certif. denied*, 110 N.J. 302 (1988) *cert. denied*, 489 U.S. 1065 (1989).

22.     Masculine forms of any noun or pronoun shall embrace and be read to include feminine or neuter, as the context may make appropriate.

## DOCUMENT REQUESTS

### *(Directed to All Defendants)*

1.      Any and all Documents relating to any insurance policy or reinsurance policy that may be used to pay all or part of any judgment entered against Defendant(s) in this Action.

## Case Specific

2.      All documents reflecting inspections, certifications, maintenance, or failures to inspect any pressure or vacuum systems at Defendants' facility during the relevant period, including all versions (drafts, final, email attachments, and marked-up copies) of the safety reports referenced in the Complaint, as well as all documents related to DOE investigations into pressure system compliance at Defendants' facility over the last ten years, including findings, correspondence, and required corrective actions.

3.      All training records, certificates, correspondence, and approvals related to Plaintiff's completion of ASME and OSHA pressure systems safety training programs.

4.      Any and all inspection logs, reports, and compliance documentation for pressure vessels, vacuum vessels, heat exchangers, and storage tanks maintained by Defendants at PPPL from 2015 through 2025.

5.      All internal communications (emails, memos, meeting minutes) discussing the absence or inadequacy of pressure systems inspections prior to and during Plaintiff's tenure as SME.

6.      Copies of all DOE contract provisions, safety directives, and federal/state regulatory requirements (including 10 C.F.R. Part 851 and N.J.A.C. 12:90) applicable to pressure systems safety at PPPL during Plaintiff's employment.

7.     All documents evidencing Defendants' knowledge of longstanding failures to inspect or maintain pressure systems, including any internal audits or risk assessments prior to Plaintiff's complaints.

8.     All correspondence, notes, and records of meetings between Plaintiff and Defendant PPPL management (including Mr. Raftopoulos) regarding Plaintiff's safety concerns and complaints from June 2023 through May 2025.

9.     All documents, reports, and drafts related to the annual Pressure Systems Safety Reviews prepared by Plaintiff, including any revisions or instructions from Defendants to alter or withhold findings.

10.     All records of Plaintiff's formal complaints submitted to NJOIG, DOE, or other external regulators, including any communications acknowledging receipt or responses thereto.

11.     Communications and meeting records related to Plaintiff's October 2024 high-level meeting with DOE officials and Defendants Ford and Meyer, including any documentation referencing Plaintiff's identity as whistleblower and retaliation concerns.

12.     All internal and external inspection schedules, procedures, and records relating to the Ion Source Heat Exchanger system, including documentation of the May 9, 2025 failure and any resulting corrective actions.

13.     All documents and communications reflecting Defendants Ford, D'Agostino, Cropper, Gerhardt, and Srinivasan's involvement in altering, falsifying, or withholding safety reports and inspection results submitted to DOE during Plaintiff's employment.

14.     All drafts, final versions, and correspondence relating to the Pressure Relief Device Risk Assessment authored by Plaintiff and any altered versions submitted to DOE without Plaintiff's authorization.

15.     All communications and records evidencing Defendants' efforts to exclude Plaintiff from inspection planning, compliance processes, and access to budget, schedules, or critical safety information.

16.     Any and all documents and communications related to Plaintiff's termination on June 4, 2025, including budgetary justifications, replacement planning (or lack thereof), and retaliation motives or discussions among Defendants.

**Personnel Files**

17.     A complete copy of the personnel file Defendant(s) maintained pertaining to Plaintiff, including but not limited to copies of Documents relating to the following: (a) medical records and reports; (b) pay and benefits provided to Plaintiff; (c) attendance, sick time, disability time, personal time and/or vacation time; (d) commendations and/or performance reviews regarding Plaintiff; (e) job title or job status changes; (f) Documents relating to any leave of absence; and (g) employer policy information provided to Plaintiff, if any.

18.     Limited portions of the personnel file(s) Defendant(s) maintained pertaining to any and all Individual Defendant(s), including but not limited to copies of Documents (written or electronic) relating to the following: (a) disciplinary action (i.e., oral reprimand, written reprimand, suspension, demotion, loss of pay, termination) being taken against any Individual Defendant; (b) performance evaluations that were conducted for any Individual Defendant; and (c) job title or job status changes for any Individual Defendant.

**Plaintiff's Hiring & Employment**

19.     Produce any and all documents, communications, statements, records, policies, manuals, or electronic data relating to Plaintiff's hiring, application, onboarding, employment, compensation, performance, discipline, benefits, applicable policies or procedures, employment

agreements, and the termination or any other adverse employment action taken against Plaintiff. This includes but is not limited to Plaintiff's job application; employment agreement(s); onboarding materials; employee handbooks and personnel manuals in effect during Plaintiff's employment; all applicable workplace policies, procedures, and benefit plans; compensation records including paystubs and timesheets; performance evaluations; disciplinary records; and any documents or communications relating to the decision to terminate or otherwise adversely affect Plaintiff's employment.

**Job Description & History**

20.    Produce written job descriptions for all positions held by Plaintiff and by any Individual Defendant or employee or agent of Corporate Defendant(s) during their respective tenures.

**Policies & Procedures**

21.    Produce a copy of Defendant(s)' policies, practices, and/or procedures concerning retaliation in connection with Plaintiff's alleged protected conduct under CEPA during the Relevant Time Period.

**Training**

22.    Produce all statements, documents, and communications relating to any anti-harassment, anti-discrimination, anti-retaliation, sensitivity, or workplace conduct training completed by Defendant(s) during the Relevant Time Period.

**Statement & Witnesses**

23.    Produce all statements, documents, communications, and records relating to the allegations, defenses, or claims in this action. This includes materials made by or involving any person with knowledge of the matter, witness statements obtained by Defendant(s),

communications between Plaintiff and Defendant(s), any admissions by Defendant(s), and any documents supporting or denying the allegations asserted in the Complaint or raised in Defendant(s)' Answer.

**Trial & Experts**

24.     Produce all documents Defendant(s) intend to use in this litigation, including those for depositions or trial, all expert reports and materials relied upon by Defendant(s) or their experts, and any books, treatises, pamphlets, or printed materials intended to support Defendant(s)' defenses or offered as trial exhibits.

**Internal Complaints & Investigation**

25.     Produce all statements, documents, and communications relating to any complaints, protected conduct, grievances, or investigations involving Plaintiff and Defendants. This includes materials related to claims or defenses in this action, discrimination, harassment, retaliation, hostile work environment, and Plaintiff's CEPA claims, as well as all investigation reports and drafts.

**Other Litigation**

26.     Any and all Documents concern concerning any and all internal complaints, lawsuits, and Grievances at Corporate Defendants the past ten (10) years concerning harassment, discrimination, hostile work environment, retaliation, or alleged violation of federal law, state law, or CEPA.

27.     Any and all Documents concerning any lawsuits, claims, charges, arbitrations, and/or proceedings – previously or currently before state court, federal court, administrative agency, U.S. Equal Employment Opportunity Commission, the NJ Department of Labor, civil rights agency, commission, board, or department – against Defendant(s) for the past ten (10) years concerning harassment, discrimination, hostile work environment, retaliation, or alleged violation

of federal law, state law, or CEPA.

**Communication**

28.    Produce all photographs, videos, recordings, messages, communications, and logs relating to this matter. This includes all communications between Plaintiff and Defendant(s), among Individual Defendants, between Defendant(s) and their agents or representatives, and with Defendant(s)' Human Resources departments. Also produce any records of phone calls, teleconferences, and videoconferences (including platforms such as Zoom and Teams) concerning Plaintiff or the subject matter of this litigation.

**Other**

29.    Any and all Documents identified or referenced in Defendant(s)' Answers to Plaintiff's First Set of Interrogatories to Defendant(s).

30.    Any and all Documents Defendant(s)' relied up upon when drafting their Answer.

**Notices**

31.    Produce any and all notices, posters, bulletins, or other Documents Defendant(s) displayed in the workplace regarding federal, state, and local employment laws during the Relevant Time Period.

**Data Preservation**

32.    Any and all Documents relating to Corporate Defendant(s)' policies, practices, and/or procedures concerning Electronic Data retention and preservation.

**Job Comparators & Replacement**

33.    Produce all documents related to any person who assumed Plaintiff's position or duties, including their contract, offer letter, and personnel file. Also produce personnel files and records for all Plaintiff's job comparators during his employment, including disciplinary actions,

performance evaluations, pay records, and job title changes. Provide job descriptions for all such comparators, as well as documents concerning job vacancies, postings, or hiring efforts made within three months before and after Plaintiff's termination, including those to fill Plaintiff's former role.

**<u>Unemployment</u>**

34.    Produce all documents, statements, and communications to or from the State of New Jersey or any other entity related to Plaintiff's claims for unemployment benefits and disability benefits, including applications and supporting materials.

## **INTERROGATORIES**

### *(Directed to All Defendants)*

**Insurance**

1.      Please set forth the existence and contents of any insurance agreement pertaining to the issues in the case, insuring the party answering this Interrogatory.  This request is made pursuant to R. 4:10-2(b). Please also state the policy limits of any and all insurance policies naming Defendant(s) as an insured which cover the claims in this litigation, along with the name of the insurance carrier and policy number, the amount of any applicable deductible, and if the claim is being defended under a Reservation of Rights Agreement or letter, attach a copy of said Reservation of Rights Agreement or letter.

**Case Specific**

2.      Identify all complaints made by Plaintiff regarding pressure or vacuum system safety, compliance, falsified certifications, or related misconduct, including the date, manner, and recipient(s) of each complaint.

3.      Identify all communications, including emails, memoranda, meeting notes, or messages, between Plaintiff and any Defendant or DOE official between June 1, 2023 and June 4, 2025, in which Plaintiff raised concerns about pressure systems safety violations or regulatory noncompliance at PPPL.

4.      Describe in detail all actions taken by Defendants Ford, D'Agostino, Cropper, Gerhardt, and Srinivasan following Plaintiff's disclosures to DOE and NJOIG regarding pressure system inspection failures, including any steps to limit, modify, or obstruct Plaintiff's role or responsibilities.

5.      Identify every instance in which Plaintiff's signature was removed, altered, or omitted from any DOE-required safety report, including the name of the individual(s) who authorized or performed the removal or alteration, and provide copies of the original and final versions of each report.

6.      Describe all meetings or communications between Defendants and DOE officials concerning Plaintiff's whistleblower complaints, including the date, attendees, topics discussed, and any outcomes or decisions related to Plaintiff's employment or safety concerns.

7.      State the date and describe all actions taken by Defendants to reassign, limit, or exclude Plaintiff from inspection planning, compliance efforts, or pressure system safety oversight activities after October 2024.

8.      Identify all safety reports, risk assessments, or inspection documents related to the Ion Source Heat Exchanger system that were prepared, reviewed, or modified from January 1, 2024 through May 31, 2025, including the names and roles of all persons involved in their creation or revision.

9.      Detail all communications or directives from Defendants that referenced budget constraints as justification for delaying, limiting, or canceling required pressure system inspections, including the names of persons who issued or authorized such directives and any written or electronic records of such communications.

10.     Describe all complaints or reports made by Plaintiff to Defendant PPPL management, including Steve Raftopoulos and any other supervisors, between June 2023 and October 2024 concerning noncompliance with state and federal pressure system safety regulations, and detail the responses received from management.

39

11.     Identify every instance in which Plaintiff was excluded from meetings, briefings, or communications concerning pressure systems safety inspections, compliance, or reporting after he submitted complaints to the NJOIG and DOE in October 2024, including dates, attendees, and the stated or implied reasons for such exclusion.

12.     Describe all actions taken by Defendants Ford, D'Agostino, Cropper, Gerhardt, and Srinivasan to modify, redact, or falsify information contained in the Pressure Relief Device Risk Assessment authored by Plaintiff, including the identities of persons responsible and copies of all original and modified drafts.

13.     State in detail the factual basis for Plaintiff's termination on June 4, 2025, including all communications, meetings, and decisions leading to that termination, and identify any references to budget constraints, performance issues, or Plaintiff's whistleblower activities in those communications or documents.

14.     Identify all communications, including emails, meeting minutes, or notes, in which Defendant Ford personally criticized, questioned, or disparaged Plaintiff's qualifications or professional competence in relation to his role as Pressure Systems SME.

15.     Describe in detail the process and individuals involved in deciding not to replace Plaintiff's Pressure Systems SME position immediately after his termination, including any discussions referencing budget or retaliation.

16.     Identify all internal communications among Defendants concerning Plaintiff's October 2024 complaints to NJOIG and DOE, including any strategies discussed to respond to or undermine Plaintiff's allegations.

17.     Provide details of any directives, communications, or actions taken by Defendant Srinivasan to withhold information, budgets, or schedules from Plaintiff that were necessary for fulfilling his duties as Pressure Systems SME.

18.     State whether Defendant PPPL conducted or authorized any investigations into Plaintiff's complaints or whistleblower disclosures after October 2024; if so, identify who conducted these investigations, describe their findings, and provide copies of all related documents or reports.

19.     Identify all individuals who participated in or were present at the meeting where Plaintiff disclosed his identity to DOE personnel, including Defendant Ford and Defendant Meyer, and describe in detail the statements made by each participant during that meeting regarding Plaintiff's safety concerns.

20.     Describe any alterations, deletions, or unauthorized modifications made to the Pressure Relief Device Risk Assessment authored by Plaintiff, including who made such changes, the dates they occurred, and the reasons provided, if any, for those changes.

**<u>Termination</u>**

21.     Please state in detail all legitimate, non-retaliatory reasons for any adverse employment actions taken against Plaintiff during his employment, including the factual basis for each reason; identify all individuals involved in making such decisions, describing each person's role and input; and specify the date, time, location, and attendees of any meetings where Plaintiff's termination or other adverse actions were discussed. Please attach all documents related to or discussing Plaintiff's termination.

**Employment**

22.    Please state whether any forms were required for original hire, promotion, transfer, or other employment changes at any time during Plaintiff's employment; if so, identify the name, purpose, and identifying number of each such form and produce copies. State whether a collective bargaining agreement governed or influenced hiring practices during Plaintiff's employment. With respect to Plaintiff, identify: (a) date of original hire; (b) gross annual earnings by year; (c) fringe benefits available at time of separation including pension, health, retirement, deferred compensation, bonuses, and profit-sharing plans; and (d) whether any of these plans changed post-separation and, if so, explain how. Describe in detail all compensation and benefits offered to Plaintiff, including: base salary or hourly rate; overtime; bonuses (including holiday); stock options; all categories of leave; health, life, and disability insurance; pension, retirement, educational leave, or tuition reimbursement. List in chronological order all job titles Plaintiff held, including dates, and if no job description exists, describe the job functions of each position. State the qualifications and skills required for each role. If Plaintiff was promoted or demoted, identify: (a) the positions affected; (b) dates of change; (c) reasons; (d) all persons involved in the decision (with their names, contact info, and roles); (e) criteria used; and (f) documents that relate to the change. Separately, provide the same information for each Individual Defendant, including all job titles held, dates, job functions if no description exists, required qualifications, and whether they were promoted or demoted (along with all information outlined above). Finally, identify every manager who supervised Plaintiff, including dates of supervision.

**Procedures & Policies**

23.    Identify and describe in full detail Defendant(s)' policies, practices, or procedures concerning employee complaints of discrimination, harassment, and/or retaliation, including how

such complaints are reported, investigated, resolved, and documented. Describe the policies, practices, and procedures in effect during Plaintiff's employment for reprimanding, suspending, or terminating employees. State whether any internal investigation, determination, or disciplinary action was taken by Defendant(s) relating to any party in this Action in the past ten (10) years, and describe in detail the facts, findings, and outcomes of each. Describe all instances in which Plaintiff was reprimanded or disciplined, including the date, reason, individuals involved, outcome, and related documentation. Similarly, identify all instances in which any Defendant or Individual Defendant was reprimanded or disciplined during their employment, including dates, reasons, and outcomes. Describe all facts and circumstances concerning any changes to Plaintiff's job title, duties, or responsibilities while employed, and likewise provide a detailed description of any changes to any Individual Defendant's position, title, or responsibilities during their tenure with Corporate Defendant(s).

**<u>Investigation</u>**

24.     Identify and describe in full detail any and all Investigations conducted by or on behalf of Defendant(s) that relate to the allegations and claims set forth in the Complaint or any denials or Affirmative Defenses asserted in the Answer. For each such Investigation, state the date it was initiated, the individuals or entities assigned or contacted to conduct the Investigation, the identity of all persons interviewed or questioned, the subject matter of each interview, the factual findings or discoveries made, and any corrective or remedial actions taken as a result. Additionally, identify and produce any and all documents, examinations, audits, findings, reports, summaries, or notices relating to such Investigations that are in Defendant(s)' or Individual Defendant(s)' possession, custody, or control.

**Grievances**

25.      Describe in detail all complaints or Grievances, whether formal or informal, made by Plaintiff during his employment regarding harassment, hostile work environment, and/or retaliation by Defendant(s), including the date of each complaint, the individuals to whom it was made, and the substance of each complaint. Identify and describe all complaints or Grievances (formal or informal) made by any employees of Defendant(s) in the past ten (10) years relating to harassment, hostile work environment, and/or retaliation by Defendant(s), including the identity of the complaining employee(s), the subject matter of each complaint, and the outcome. For each complaint or Grievance identified in response to the preceding, describe the investigation conducted, the findings reached, and any disciplinary or remedial actions taken. Further, describe in detail the procedures, methods, and protocols in place at Defendant(s) for receiving, investigating, and resolving complaints or Grievances of harassment, retaliation, or hostile work environment, including the roles played by the Human Resources Department or any equivalent entity.

**HR & Training**

26.      Identify all individuals employed by Defendant(s) who have had responsibilities relating to Human Resources, personnel matters, employee training, orientation, and employee monitoring within the past five (5) years to the present, and provide their job titles and dates of employment. Identify each Equal Employment Opportunity (EEO) officer employed by Corporate Defendant(s) during the same time period, including their names, job titles, dates of employment, last known addresses, and telephone numbers. State whether any Defendant(s) underwent an orientation program upon hire and, if so, describe the orientation program(s) used in the past five (5) years, and identify and produce all related Documents. Describe in detail any and all

harassment, discrimination, sensitivity, or workplace conduct training administered by Defendant(s) within the past five (5) years, including the dates, participants, subject matter covered, and whether such training was conducted internally or by a third party; if by a third party, provide the third party's name, business address, telephone number, and qualifications. State whether Corporate Defendant(s) maintains employment-related records and posts notices as required by federal, state, or local laws, and describe in detail how such compliance has occurred over the past five (5) years. Further, identify whether Defendant(s) has received any notices, bulletins, or posters from the EEOC or the New Jersey Department of Labor instructing public posting, and describe when, where, and how such notices were or are currently posted.

**<u>Other Cases</u>**

27.     State whether any lawsuits, claims, charges, arbitrations, or other legal or administrative proceedings have been filed, charged, or otherwise initiated against Defendant(s) within the past ten (10) years alleging harassment, retaliation, or related employment misconduct in any forum, including but not limited to state court, federal court, the U.S. Equal Employment Opportunity Commission, the New Jersey Department of Labor, or any civil rights agency, commission, board, or department. For each such matter, provide: (a) the name, last known address, telephone number, and job title of each complainant; (b) the title of the action; (c) the name and address of the court or agency where the action was filed; (d) the docket or case number; (e) the date of filing; (f) the nature and substance of the claims or allegations; (g) the current status or final disposition of the matter; (h) whether the matter proceeded to trial and, if so, the outcome; (i) the amount of any punitive damages awarded or paid; (j) the amount of any compensatory damages awarded or paid; and (k) identify and produce all documents that relate in any way to the foregoing. Additionally, set forth in detail any and all notices or warnings received by Defendant(s)

in the last five (5) years from any local, state, or federal regulatory authority that oversees, licenses, regulates, or disciplines Defendant(s) or their employees. Further, describe in detail any complaints, investigations, or inquiries by the New Jersey Department of Labor concerning any employment-related matter involving Defendant(s) within the past five (5) years, and identify and produce any documents that pertain to any of the matters described in this Interrogatory.

**Statement & Admissions**

28.    Set forth whether Defendant(s) have obtained a statement from any Person not a party to this Action.  If Your answer is in the affirmative, state:

      a.    Name and address of the Person who gave the statement, and date statement obtained;
      b.    if written, whether signed by the Person;
      c.    if oral, name and address of the Person who obtained the statement, and if recorded, the nature and present custody of recording;
      d.    attach a copy of all said written statements; and
      e.    if oral, set forth completely the substance of said statements.

**Communication**

29.    State whether Defendant(s)' agents communicated with any Persons or Entities that are not parties to this litigation in connection with the subject matter of this lawsuit.  For any and all such Communications that were oral, specify the nature and substance of the Communication, the date on which it occurred, the place at which it occurred, and the names, last known addresses, and last known telephone numbers of all Persons present.  For any and all such Communications that were written, provide true and accurate copies of each such Communication.

30.    State whether at any time, Defendant(s) ever taped and/or digitally recorded any Communication with the Plaintiff, whether face-to-face or telephonic.  If so, describe in detail, including but not limited to:

      a.    the identity of each Defendant(s) recorded;

b.    the date, time, place, and manner in which You recorded the Communications;

c.    the substance of the recorded Communications;

d.    the device used for making such recordings; and

e.    whether You obtained consent to tape or record such Communications. Provide any such recordings.

**Trial & Experts**

31.    Identify the name, last known address, telephone number, and expected subject matter of testimony for each and every person Defendant(s) may call as a witness at trial, including all facts to which each is expected to testify. Further, identify the names and business addresses of all expert witnesses retained or consulted by Defendant(s) in connection with this matter, regardless of whether they will be called at trial. For each such expert, state the expert's field of expertise; educational background; a list of all books, periodicals, or other written works they have authored or contributed to; the date, time, and content of any oral opinions rendered, including the person(s) to whom such opinions were given; and provide true and complete copies of all written reports, opinions, and drafts. Identify each person with whom the expert consulted in forming their opinion, including names, addresses, telephone numbers, job titles, and current employers. Additionally, identify and produce all documents and tangible items reviewed, relied upon, or created by each expert in formulating their opinion or preparing their report(s), and state whether any such items will be used as trial exhibits. As to any consulting experts not expected to testify at trial, provide the subject matter of their consultation, their qualifications, training, education, and professional experience (including degrees, institutions attended, dates, and employers), and attach any written reports or, if no written reports exist, provide detailed summaries of their oral opinions and the documents relied upon in reaching those conclusions. If any such materials become available after service of these responses, Defendant(s) are to supplement their answers accordingly.

**Individual Defendant**

32.     Identify the last known physical address, email address, and telephone number for each Individual Defendant. Additionally, identify all email accounts (including internal, external, personal, and alias accounts) that each Individual Defendant used in any capacity as an employee, agent, or representative of Defendant(s) during the Relevant Time Period.

**Damages**

33.     If the party or parties answering these Interrogatories believes that some Person, not a party to this Action, is in some way responsible for the injuries and/or damages alleged, please set forth the name and address of such Person, and the acts or omissions and address of such Person, the acts or omissions of said Person which caused the injury or damage and the facts which support the belief.

**Legal & Other**

34.     Identify all individuals with knowledge of any facts relating to the claims or defenses in this action, including each person's name, last known address, telephone number, and the subject matter of their knowledge. State whether the individual certifying these Interrogatory responses reviewed the typed answers in full prior to verification. If that person did not personally answer all Interrogatories, identify every individual who provided information used in the responses and specify which Interrogatories each contributed to. Describe in detail the factual basis for every Affirmative Defense and every denial of the allegations in the Answer. Finally, identify any Documents known or believed to exist that relate to the subject matter of this litigation but are not in Defendant(s)' possession, custody, or control; include the source of this belief, the nature of the Documents, and the name of the Person or Entity believed to possess them.

**Job Comparators & Post Termination**

35.    Identify each individual who assumed Plaintiff's position or performed any of Plaintiff's job duties following Plaintiff's termination. For each such person, provide their full name, address, qualifications, job title, a description of the duties they performed, and all dates of employment. Additionally, identify every medium—including newspapers, employment agencies, online platforms, job boards, and internal posting systems—used by Corporate Defendant to advertise available job openings during Plaintiff's employment, and within one (1) year following Plaintiff's termination.

## <u>INTERROGATORIES TO INDIVIDUAL DEFENDANT(S)</u>
### *(Directed to Individual Defendants)*

1.      Identify each and every Document of every kind and description of which Individual Defendant(s) has knowledge which is, in any way, intended to support any claim, defense, affirmative defense, or factual allegation, or to be used by Individual Defendant(s) in any manner in this matter, including but not limited to, during the examination of any witness; describe the Document as to content and other characteristics, and state the present location of such Documents, or in lieu thereof, attach true copies to Individual Defendant(s)'s answers to these Interrogatories. For each and every such Document or tangible thing upon which Individual Defendant(s) will rely in support of Individual Defendant(s)'s claims/defenses/affirmative defenses state:

> a.      its description;
> b.      its nature;
> c.      the name and address of Person who has custody;
> d.      its location; and
> e.      its condition.

2.      Identify any and all email addresses You have during the past five (5) years.

3.       Identify any and all cell phone numbers You have used during the past five years as and identify the carrier and current location of each and every cell phone. For any cell phone that is no longer in Your possession, identify the name and address of the Person's whose possession, custody, or control they are in.

4.       Have You ever been convicted of a criminal offense?  If so, for each and every conviction, identify and set forth in detail:

> a.      the particular offense(s) or crime(s) of which You have been convicted;
> b.      the date of each such conviction;
> c.      the courts in which You were convicted;

    d.      the facts surrounding and underlying each such conviction; and

    e.      the punishment or sentence received.

5.      State whether You are a supervisor. If so, (1) state all of Your supervisory responsibilities; (2) identify which department and which employees You supervise in any capacity; (3) identify employees who You directly supervise; and (4) state whether You supervised Plaintiff and in what capacity.

## PUNITIVE DAMAGES DOCUMENT REQUESTS

### *(Directed to Corporate Defendants)*

1.      Any and all financial statements prepared for the prior 10 years, up to and including the present, setting forth income, expenses, assets, liabilities, and profits of the Corporate Defendant(s).

2.      Any and all tax returns filed by the Corporate Defendant(s) for each of the last ten (10) tax years.

3.      Any and all Documents evidencing assets of the Corporate Defendant(s).

4.      Any and all Documents evidencing the Corporate Defendant(s)' interest in any real estate.

5.      Any and all Documents evidencing the financial obligations of the Corporate Defendant(s).

6.      Any and all Documents evidencing any judgment against the Corporate Defendant(s) during the past ten (10) years and the amount of such judgment(s).

7.      Any and all Documents evidencing bank accounts held by the Corporate Defendant(s) during the past ten (10) years, the location of those accounts, account numbers, and balances of those accounts.

8.      Any and all Documents evidencing or setting forth accounts receivable and/or obligations owed by others to the Corporate Defendant(s) during the past ten (10) years.

9.      Any and all Documents evidencing payments made by the Corporate Defendant(s) to creditors during the past ten (10) years.

10.      Any and all corporate books or any other written memorandum setting forth income received by the Corporate Defendant(s) during the past ten (10) years.

11.     Any and all inventories taken by the Corporate Defendant(s) of its property at any time during the past ten (10) years.

## <u>INTERROGATORIES RELATED TO PUNITIVE DAMAGES</u>

### *(Directed to Corporate Defendants)*

1.    For each and every Corporate Defendant, set forth:

    a.    The full name of the Corporate Defendant;

    b.    The date of formation;

    c.    The state of formation;

    d.    All states in which the Corporate Defendant conducts its business;

    e.    All states in which the Corporate Defendants has registered to do business;

    f.    The full name and residential address of any Person who has been a shareholder, member, or partner of Corporate Defendant during any part of the last two years;

2.    For each and every Person identified in response to subsection (f) above, state the

Person's ownership interest in Corporate Defendant;

    a.    The full name and residential address of any Person who has served as a director of Corporate Defendant during any part of the last two years, along with the specific period during which such Person served as director;

    b.    The full name and addresses of all any Person who served as an officer of the corporation during any part of the past two years, along with the title and specific period during which such Person served as an officer;

    c.    All trade or fictitious names under which Corporate Defendant has conducted business during any part of the past two years;

    d.    The complete street address of all locations where Corporate Defendant has conducted its business during any part of the past two years, along with the specific period during which it conducted such business at each location; and

    e.    The full name and address of the Person who has custody of this corporation's books and records.

3.    Is a majority of the ownership interest in Corporate Defendant held by any single

individual or Entity? If so, state for the individual or Entity:

    a.    The full name and address;

    b.    The state of formation, if applicable;

    c.    The state(s) in which such individual or Entity does business;

    d.    The address of each business office;

    e.    The name and address of each current officer or director; and

    f.    The nature of the business in which such individual or Entity is engaged.

4.      For all real property owned by Corporate Defendant(s), state:

    a.      The physical address (the "Location");
    b.      The nature of the business conducted at the Location;
    c.      The dates during which Corporate Defendant has owned the Location; and
    d.      The number of individuals presently employed at the Location.

5.      State the name, address, and telephone number of each and every Entity in which any individual identified in response to Interrogatory related to Punitive Damage No. 1(f) now has an interest and set forth the nature of such interest.

6.      For each and every bank account of Corporate Defendant, list the name of the bank, the bank's address, the account number, and the name in which the account is held.

7.      State the present location of any and all books and records of Corporate Defendant(s), including financial records.

8.      State the name and address of each and every Person/Entity who/that prepares, maintains, and/or controls the business records and checkbooks of Corporate Defendant.

9.      List each and every physical asset of Corporate Defendant. For each and every physical asset identified, state the location of the physical asset and, if such asset is subject to a lien, state the amount of the lien and the name and address of the lienholder.

10.     Does the Defendant(s) own any real estate?

11.     If the answer for the preceding interrogatory is in the affirmative, please state for each and every property:

    a.      Name(s) in which property is owned;
    b.      Address of property;
    c.      Date property was purchased;
    d.      Purchase price;
    e.      Name and address of mortgage holder, if any;
    f.      Balance due on mortgage, if any;
    g.      The names and addresses of all tenants and monthly rentals paid by each tenant.

12.     List any and all vehicles, equipment, and/or motor vehicles, owned by the

Defendant(s) and state the following for each vehicle:

      a.     Make, model, and year;
      b.     License plate number;
      c.     Vehicle identification number;
      d.     If there is a lien on the vehicle, the name and address of the lienholder and the amount due on the lien.

13.     List any and all accounts receivable due to the Defendant(s), stating the name, address, and amount due on each receivable.

14.     For any transfer of business assets that has occurred within six months from the date of these Interrogatories, specifically identify:

      a.     The nature of the asset;
      b.     The date of the transfer;
      c.     Name and address of the Person or Entity to whom the asset was transferred;
      d.     The consideration paid for the asset and the form in which it was paid, e.g., check, cash; and
      e.     Explain in detail what happened to the consideration paid for the asset.

15.     Set forth any and all judgments that have been entered against the Defendant(s) and include the following for each:

      a.     Creditor's name;
      b.     Creditor's attorney;
      c.     Amount due;
      d.     Name of Court; and
      e.     Docket number.

          McOMBER McOMBER & LUBER, P.C.
          *Attorneys for Plaintiff, Justin Bradley*

          By: */s/ Peter D. Valenzano*
          PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

## **CERTIFICATION**

      I hereby certify (or aver) that I have reviewed the document production request and that I have made or caused to be made a good faith search for documents responsive to the request. I further certify (or aver) that as of this date, to the best of my knowledge and information, the production is complete and accurate based on ( ) my personal knowledge and/or ( ) information provided by others. I acknowledge my continuing obligation to make a good faith effort to identify additional documents that are responsive to the request and to promptly serve a supplemental written response and production of such documents, as appropriate, as I become aware of them. The following is a list of the identity and source of knowledge of those who provided information to me:

      1.

      2.

      3.

      4.

      5.


Dated:_____          By:_____

## **CERTIFICATION**

      I certify that the foregoing answers to the Interrogatories made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: _____          By:_____

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>             Plaintiff,<br><br>        v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>            Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>      <u>Civil Action</u> |

## **NOTICE OF R. 4:14-2(c) VIDEO DEPOSITION OF CORPORATE DEFENDANT(S)**

**PLEASE TAKE NOTICE** that pursuant to Rule 4:14-2(c) of the New Jersey Rules of

Court, Plaintiff Justin Bradley through his undersigned counsel, will take the deposition upon oral

examination of the corporate representative of  Corporate Defendants(s) **commencing on**

**February 23, 2026, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

Corporate Defendant(s) is required to designate and produce for deposition a person or persons to testify on its behalf.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted before a notary public or other duly authorized officer and will be recorded stenographically and/or by videotape in accordance with Rules of Court.  The deposition shall continue from day to day, weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                              Plaintiff,<br><br>                    v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>          <u>Civil Action</u> |

## <u>NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION</u>

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff

through her undersigned counsel, will take the deposition upon oral examination of Defendant

Michael Ford **commencing on February 24, 2026, at 10:00 AM,** at the law offices of McOmber

McOmber & Luber, P.C.

61

     **PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted

before a notary public or other duly authorized officer and will be recorded stenographically and/or

by videotape in accordance with Rules of Court.  The deposition shall continue from day to day,

weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                             Plaintiff,<br><br>                    v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                             Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>Civil Action |

### NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff through her undersigned counsel, will take the deposition upon oral examination of Defendant Michael D'Agostino **commencing on February 25, 2026, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted

before a notary public or other duly authorized officer and will be recorded stenographically and/or

by videotape in accordance with Rules of Court.  The deposition shall continue from day to day,

weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated:  August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
 cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
 pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
 lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                              Plaintiff,<br><br>                    v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>              <u>Civil Action</u> |

## <u>NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION</u>

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff

through her undersigned counsel, will take the deposition upon oral examination of Defendant

Mark Cropper **commencing on February 26, 2026, at 10:00 AM,** at the law offices of McOmber

McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted

before a notary public or other duly authorized officer and will be recorded stenographically and/or

by videotape in accordance with Rules of Court.  The deposition shall continue from day to day,

weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated:  August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
 cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
 pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
 lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                Plaintiff,<br><br>        v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>      <u>Civil Action</u> |

## <u>NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION</u>

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff through her undersigned counsel, will take the deposition upon oral examination of Defendant Mark Cropper **commencing on February 27, 2026, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted

before a notary public or other duly authorized officer and will be recorded stenographically and/or

by videotape in accordance with Rules of Court.  The deposition shall continue from day to day,

weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*


By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>          Civil Action |

### NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff

through her undersigned counsel, will take the deposition upon oral examination of Defendant

Stefan Gerhardt **commencing on February 27, 2026, at 10:00 AM,** at the law offices of

McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted before a notary public or other duly authorized officer and will be recorded stenographically and/or by videotape in accordance with Rules of Court.  The deposition shall continue from day to day, weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID # 037892010
  pdv@njlegal.com
Lauren M. Hill, Esq. – NJ ID # 304102019
  lmh@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, New Jersey 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Justin Bradley*

| | |
|---|---|
| JUSTIN BRADLEY,<br><br>                              Plaintiff,<br><br>                      v.<br><br>THE TRUSTEES OF PRINCETON UNIVERSITY d/b/a PRINCETON PLASMA PHYSICS LABORATORY; MICHAEL FORD; MICHAEL D'AGOSTINO; MARK CROPPER; STEFAN GERHARDT; RAM SRINIVASAN; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                              Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MERCER COUNTY<br><br>DOCKET NO.:<br><br>           <u>Civil Action</u> |

### <u>NOTICE OF R. 4:14-2 AND R. 4:14-9 VIDEO DEPOSITION</u>

**PLEASE TAKE NOTICE** that pursuant to the New Jersey Rules of Court, Plaintiff through her undersigned counsel, will take the deposition upon oral examination of Defendant Ram Srinivasan **commencing on March 02, 2026, at 10:00 AM,** at the law offices of McOmber McOmber & Luber, P.C.

**PLEASE TAKE FURTHER NOTICE** that the foregoing deposition shall be conducted

before a notary public or other duly authorized officer and will be recorded stenographically and/or

by videotape in accordance with Rules of Court.  The deposition shall continue from day to day,

weekends and holidays excepted, until completed, unless otherwise agreed by the parties.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Justin Bradley*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: August 06, 2025

# Civil Case Information Statement

**Case Details: MERCER | Civil Part Docket# L-001635-25**

**Case Caption:** BRADLEY JUSTIN  VS THE TRUSTEES OF PRIN CETON UNI

**Case Initiation Date:** 08/06/2025

**Attorney Name:** PETER DOUGLAS VALENZANO

**Firm Name:** MCOMBER MCOMBER & LUBER, PC

**Address:** 54 SHREWSBURY AVE
RED BANK NJ 07701

**Phone:** 7328426500

**Name of Party:** PLAINTIFF : Bradley, Justin

**Name of Defendant's Primary Insurance Company** (if known): None

**Case Type:** WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Justin Bradley?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/06/2025
Dated

/s/ PETER DOUGLAS VALENZANO
Signed